**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

**TRANS-RADIAL SOLUTIONS, LLC,**

    **Plaintiff,**

    **v.**

**CIVIL NO. 2:18-cv-656**

**BURLINGTON MEDICAL, LLC,
MR. JOHN WILLIAMS,
FOX THREE PARTNERS, LLC,** *and*
**PHILLIPS SAFETY PRODUCTS, INC.,**

    **Defendants.**

## OPINION AND ORDER

This matter comes before the Court on the defendants' partial motion to dismiss the plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Motion to Dismiss"). ECF No. 19. For the reasons stated herein, the defendants' partial Motion to Dismiss is **GRANTED, IN PART,** and **DENIED, IN PART,** consistent with the directives of this Opinion and Order.

## I. PROCEDURAL BACKGROUND

On December 12, 2018, Trans-Radial Solutions, LLC ("TRS" or "Plaintiff") filed the instant action against four defendants: Burlington Medical, LLC ("Burlington"), John Williams ("Williams"), Fox-3 Partners LLC ("Fox Three"), and Phillips Safety Products, Inc. ("Phillips") (collectively, "Defendants"). See Complaint ("Compl."), ECF No. 1. The complaint asserts the following thirteen counts:

- Count I: Patent Infringement (against Burlington and Phillips)

- Count II: Copyright Infringement Reproduction (against Burlington and Phillips)

1

- Count III: Copyright Infringement Marketing and Sale (against Burlington and Phillips)

- Count IV: Unfair Competition, False Advertising and False Designation of Origin Pursuant to 15 U.S.C. § 1125(a) (against all Defendants)

- Count V: Unfair Competition and Violation of the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200(A) (against all Defendants)

- Count VI: Common Law Passing Off (against all Defendants)

- Count VII: Tortious Interference with Prospective Contractual Relations (against all Defendants)

- Count VIII: Conversion (against Williams and Burlington)

- Count IX: Breach of Fiduciary Duty and Duty of Loyalty (against Williams)

- Count X: Breach of Contract (against Williams and Burlington)

- Count XI: Civil Conspiracy (against all Defendants)

- Count XII: Misappropriation of Trade Secrets, 18 U.S.C. § 1836 (against Williams, Burlington, and Fox Three)

- Count XIII: Negligence (against Williams and Burlington).

On February 12, 2019, Defendants filed the instant Motion to Dismiss seeking dismissal of Defendant Williams from all relevant counts and dismissal of Counts IV–XIII in their entirety for failure to state a claim. ECF No. 19; see Memorandum in Support ("Mem."), ECF No. 20. On March 1, 2019, TRS filed its brief in opposition ("Opp."). ECF No. 27. On March 8, 2019, Defendants filed their reply. ECF No. 32. On June 27, 2019, the Court conducted a hearing on Defendants' partial Motion to Dismiss. Such motion is now before the Court.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim should be granted if it appears that the plaintiff is not "entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Harrison v. United States Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988)

(citation omitted). To survive a motion to dismiss, the facts alleged in the complaint "must be enough to raise a right to relief above a speculative level" and must be sufficient "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547.

In resolving a Rule 12(b)(6) motion, the court must assume the truth of all facts alleged in the complaint and construe the factual allegations in favor of the non-moving party. Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009). However, the court is not bound by the complaint's legal conclusions. Id. In addition, the court may consider the complaint's attachments as well as documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). The court may also take judicial notice of items in the public record, Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004), including patent, copyright, and trademark registrations, Zinner v. Olenych, 108 F. Supp. 3d 369, 377 n.2 (E.D. Va. 2015).

## III.    FACTUAL BACKGROUND

As set forth above, when deciding Defendants' motion to dismiss, the Court must assume the truth of the factual allegations in the complaint as well as any exhibits attached to the complaint or to the motion to dismiss that are authentic and integral to the complaint. A summary of the facts alleged in or properly incorporated into Plaintiff's complaint follows.

### The Parties

Plaintiff TRS is a South Carolina limited liability company with its principal place of business in Roebuck, South Carolina. Compl. ¶ 7. TRS researches, develops, manufactures, markets, and sells radiation shielding products. Id. ¶ 17. Since 2014, dozens of healthcare providers have used TRS's Rad-Guard™ brand Radiation Shields and other TRS products to decrease radiation exposure to medical personnel. Id.

3

Defendant Burlington is a Virginia limited liability company with its principal place of business in Newport News, Virginia. Id. ¶ 8. Burlington makes, sells, or offers to sell radiation shields for use by medical professionals. Id. ¶ 25. Defendant Williams is the CEO and owner of Burlington and resides in Virginia. Id. ¶ 9. Defendant Fox Three is a Virginia investment company that acquired Burlington in or about May 2015. Id. ¶¶ 10, 35. Prior to such acquisition, Burlington operated as Burlington Medical Supplies, Inc., which, according to TRS, was "the same enterprise operating out of the same location using essentially the same name, the same CEO, and the same website [www.burmed.com] to market and distribute the same products and services." Id. ¶ 38. Defendant Phillips is a New Jersey corporation that manufactures radiation protection products for itself and the other defendants. Id. ¶ 11.

**TRS's Relevant Intellectual Property**

On October 24, 2017, the United States Patent and Trademark Office ("USPTO") issued Patent No. 9,795,346, entitled "Radiation Shield Assembly," relating to a radiation shield affixed to a medical device hangar (hereinafter, "the '364 Patent"). Id. ¶ 20; id. at Ex. A. TRS is the owner and assignee of all rights, title and interest in the '346 Patent. Id. ¶ 21.

On September 11, 2016, the United States Copyright Office issued Registration No. VAu 1-260-031 registering original works of authorship entitled "TRS Web Images" (hereinafter, "the '031 Registration"). Id. ¶ 23. The TRS Web Images are assigned to and beneficially owned by TRS and are used to depict TRS's Rad-Guard™ Radiation Barrier. Id. ¶¶ 23–24.

**The 2014 Distribution Agreement**

On October 15, 2014, TRS and Burlington's precursor entity, Burlington Medical Supplies Inc., entered into a "Non-Exclusive Distributorship Agreement" by which Burlington Medical Supplies Inc. agreed to distribute certain TRS products, including Rad-Guard™ shields and

4

Cardio-TRAP systems, at agreed-upon prices (hereinafter "Distribution Agreement"). <u>See</u> Redacted Distribution Agreement, Exhibit 1 to Def. Mem., ECF No. 20-1. The contract term was one year, commencing on October 15, 2014, and would "automatically continue unless terminated by either party with at least 30 Days prior written notice." <u>Id.</u> ¶ 14.

In connection with such agreement, on or about December 29, 2014, TRS provided twenty-four (24) miniature Cardio-TRAP systems called "Mini-TRAPs" to Burlington to be used for Burlington sales demonstrations. <u>Id.</u> ¶ 30. In addition, in or around January 2015, TRS provided four (4) Rad-Guard™ Radiation Shields to Burlington for demonstration purposes. <u>Id.</u> ¶ 31. In early 2015, TRS also provided training for Burlington salespeople and supplied copyrighted photographs of TRS products to Burlington for use in its sales brochures. <u>Id.</u> ¶¶ 32–33.

### The 2015 Acquisition

In or around May 2015, Fox Three acquired Burlington Medical Supplies, Inc., changed its name to Burlington Medical, LLC, and maintained Williams' leadership role as CEO of the newly-acquired company. <u>Id.</u> ¶ 38. Shortly after the acquisition, TRS's Chief Financial Officer, Robert Shealy, met with Williams to confirm that the business relationship between TRS and Burlington would continue. <u>Id.</u> ¶ 40. During such meeting, Williams expressly confirmed to Mr. Shealy that it would. <u>Id.</u> From that time through the first quarter of 2018, Burlington continued to distribute TRS products. <u>Id.</u> ¶ 41. Indeed, during and after the acquisition, "Burlington was still serving as a sales representative and distributor for TRS's products" and "Williams worked with TRS and its employees to sell TRS products to customers." <u>Id.</u> ¶ 39. As a result, between 2015 and 2018, "Williams had access to TRS customer contracts, testing results, and technical information relating to the TRS products with the express understanding that all such information belonged to TRS." <u>Id.</u>

## Defendants' Alleged Infringement and Other Alleged Misconduct

The complaint alleges that Fox Three and Williams formed Burlington, in part, to manufacture, market, and sell products to compete with TRS's products, including Burlington's IV Mounted Barrier. Id. ¶ 43. Specifically, TRS alleges that "Defendants copied TRS's patented technology and copyrighted materials and have incorporated TRS's intellectual property into their 'IV Mounted Barriers'" in order to "compete with TRS's Rad-Guard™ brand Radiation Shields" and "capture the radiation shield market." Id. ¶ 42–43.

The complaint further alleges that, in 2016, TRS discovered that Burlington was producing, marketing and selling a copy of TRS's Rad-Guard™ Radiation Shield, which Burlington advertised as its own product called the "IV Mounted Barrier." Id. ¶ 44. Burlington's website depicted the IV Mounted Barrier using photographs that were "willfully copied from TRS's registered photographs" and then intentionally doctored by photo-editing. Id. ¶ 45. Specifically, TRS alleges that Burlington doctored such photographs to remove the TRS Rad-Guard™ mark and replace it with the Burlington mark. Id. ¶ 46. TRS claims that, through this alleged infringement, "Burlington has deceived TRS's customers and potential customers, defeated the designation of origin purpose of TRS's marks and trade dress, thwarted the further development of goodwill in TRS marks, and usurped a stream of advertising rightfully belonging to TRS." Id. ¶ 46.

On September 20, 2016, TRS, by counsel, sent a letter to Williams objecting to Burlington's infringing activity related to the IV Mounted Barrier. Id. ¶ 47. In response, Williams agreed to cease marketing the IV Mounted Barrier, and Burlington continued to distribute other TRS products. Id. Nonetheless, TRS claims that Williams and Burlington continued to use TRS's trade secrets and continued to market and sell the IV Mounted Barrier for at least two more years

6

and made sales of such product to actual and potential TRS customers, including McLaren Bay

Region Hospital in 2017. Id. ¶ 49.

> On April 13, 2017, Mr. Shealy of TRS sent a letter to Williams stating the following:
>
> Mr. Williams,
>
> The contract between our companies provides in Section 14 (Page 4) that either party may terminate the contract with at least 30 days notice. We hereby give notice to that effect. Please arrange to return all demonstration units of the Rad-Guard and Cardio-TRAP which we loaned to Burlington early in our business relationship.
>
> We appreciated your company's professional attitude toward ordering and payment of invoices. Although we must seek other distributors to increase our market presence, your company has been a pleasure to work with.

See April 13, 2017 Letter, Exhibit 2 to Def. Mem., ECF No. 20-2.

In or about August 2018, TRS allegedly sent a letter to Fox Three requesting a meeting to address the alleged infringing activity of Williams and Burlington. Id. ¶ 50. TRS claims that Fox Three then ceased communications with TRS "except for the completion of a few outstanding purchase orders." Id. ¶ 51.

The complaint further alleges that Burlington, Williams and Fox Three hired and directed Phillips, a manufacturer of occupational safety products, to build or cause to be built Burlington's IV Mounted Barriers. Id. ¶ 59. In addition, Phillips allegedly "makes its own unauthorized copies that infringe both the '346 Patent and the '031 Registration, which Phillips markets and sells as 'IV Mounted Barrier'." Id. ¶ 60. TRS claims that Phillips' depictions of this product on its website and in its sales brochures are "willfully copied from TRS's registered photographs." Id. ¶¶ 62–63.

The complaint further alleges that TRS has asked Burlington to return the twenty-four (24) Mini-TRAPs and four (4) Rad-Guard™ Radiation Shields that TRS provided to Burlington for demonstration purposes in late 2014 and early 2015, respectively, but "Burlington continues to unlawfully possess them." Id. ¶¶ 30, 31. TRS claims that the Mini-TRAPs are collectively valued

at approximately $6,000.00 and the Rad-Guard™ Radiation Shields are collectively valued at approximately $4,000.00. Id. ¶¶ 30, 31.

## IV.    MOTION TO DISMISS ALL COUNTS AGAINST DEFENDANT WILLIAMS

The first part of Defendants' Motion to Dismiss seeks dismissal of Counts IV–XIII as to Defendant Williams on the grounds that he is not properly named as a defendant in those counts. The crux of Defendant's argument is that TRS improperly seeks to hold Williams, the CEO of Burlington, personally liable for the actions of Burlington without stating facts sufficient to pierce the corporate veil. For example, the complaint alleges that "the evidence will show that . . . Burlington is merely the alter ego of Williams." Compl. ¶ 28. But, according to Williams, the complaint fails to allege any facts showing a unity of interest, a disregard of corporate formalities, comingling of assets, or use of the corporate form to commit a crime, fraud, or other injustice. ECF No. 20 at 6. Therefore, Williams argues that the conclusory allegation that he is the "alter ego" of Burlington is insufficient to establish his liability for the actions of Burlington. Id. at 7.

However, TRS need not "pierce the corporate veil" to sue Williams if TRS alleges sufficient facts to show that Williams, as officer or director of Burlington, took intentionally tortious actions on behalf of the corporation. Airlines Reporting Corp. v. Pishvaian, 155 F. Supp. 2d 659, 666 (E.D. Va. 2001) (citing Sit-Set, A.G. v. Universal Jet Exch., Inc., 747 F.2d 921, 929 (4th Cir. 1984) ("Corporate officers may of course be liable jointly and severally with their corporation for obligations arising out of tortious conduct of the officers that subject the corporation to liability.")). For example, a corporate officer is not liable for the corporation's contractual obligations, but such officer may be jointly and severally liable for fraud if "the corporate office directly engaged in the transaction . . . [for] which liability was found." Sit-Set,

747 F.2d at 929.[1]

Here, the complaint does not seek to hold Williams liable merely because he is the alleged CEO of Burlington. Rather, the complaint alleges that Williams personally directed and/or engaged in nearly all of the tortious conduct alleged. For example, the complaint alleges that:

- Williams, along with Fox Three and Phillips, directed Burlington to "make, sell, or offer to sell radiation shields that are covered by one or more of the claims of the '346 Patent;" Compl. ¶ 25, and directed Burlington to "hire[] Phillips to produce the [infringing] IV Mounted Barrier," id. ¶ 128;

- "Williams worked with TRS and its employees to sell TRS products to customers," id. ¶ 39;

- "Fox Three and Williams formed Burlington in part to manufacture, market, and sell competing products to compete with TRS," id. ¶ 43;

- Williams sold "the IV Mounted Barriers to compete with TRS's Rad-Guard™ brand Radiation Shields," id. ¶ 43;

- "Williams and Burlington used TRS's trade secrets and continued to market and sell the infringing product [the IV Mounted Barrier] for at least two more years," id. ¶ 49;

- "Burlington, Williams, and Fox Three copied or caused to be copied the TRS Web Images under the '031 Registration belonging to TRS and/or created or caused to be created a derivative work therefrom," id. ¶ 52;

- "Burlington, Williams, and Fox Three hired and directed Phillips to build or cause to be built Burlington's IV Mounted Barriers," id. ¶ 59;

- "Williams and Burlington have exercised dominion over TRS's personal property, including TRS's confidential information and proprietary material, without the consent of TRS . . ." id. ¶ 154.

---

[1] Similarly, members or managers of LLCs may also be individually liable for any misconduct in which they are "personally engaged." Bennett v. Zydron, No. 2:17CV92, 2017 WL 9478505, at *5 (E.D. Va. Aug. 17, 2017), report and recommendation adopted, No. 2:17CV92, 2017 WL 4176972 (E.D. Va. Sept. 21, 2017) (finding that member/manager of LLC could be personally liable under § 1125(a) of the Lanham Act if he personally engaged in false association or false advertising); see also McFarland v. Va. Ret. Servs. of Chesterfield, L.L.C., 477 F. Supp. 2d 727, 737–40 (E.D. Va. 2007) (dismissing as parties individual defendants where plaintiff failed to "plead facts demonstrating a particular member's culpability in the LLC's tortious conduct that extends beyond that person's mere status as a member of the company," but maintaining action against individual defendant where plaintiff pled that defendant personally participated in the misconduct).

In light of these allegations, Williams' request to be dismissed as a defendant in this action on the grounds of that the complaint does not establish any corporate veil-piercing is without merit. Therefore, Defendants' Motion to Dismiss Counts IV–XIII as to Williams on this ground is denied.

## V.    MOTION TO DISMISS COUNTS IV, V, AND VI AS TIME-BARRED

In second part of Defendants' motion, they argue that Counts IV, V, and VI should be dismissed as time-barred. These counts assert a variety of unfair competition and false advertising claims against all Defendants. Count IV claims that Defendants willfully engaged in unfair competition, false advertising, and false designation of origin, in violation of the Lanham Act, 15 U.S.C. § 1125(a). Count V claims that Defendants engaged in unfair competition, in violation of Virginia common law and the Virginia Consumer Protection Act, Va. Code § 59.1-200(A). Count VI claims that Defendants engaged in unlawful passing off in violation of Virginia common law.

Defendants move to dismiss each of these counts (Counts IV–VI) as barred by a two-year statute of limitations. Mem., ECF No. 20, at 9; see PBM Prod., LLC v. Mead Johnson & Co., 639 F.3d 111, 121 (4th Cir. 2011) (because the Lanham Act "provides no express statute of limitations," courts apply the "analogous state limitations period," which, in Virginia, is two years for fraud-related claims, including unfair competition). Defendants argue that the latest time at which TRS's unfair competition claims could have accrued is September 2016, when, according to the complaint, TRS discovered the allegedly unfair advertising it complains of. ECF No. 20 at 9 (citing Compl. ¶ 47). Defendants therefore conclude that TRS's complaint, which was filed on December 12, 2018, was filed after the limitations period expired in September 2018. Id.

TRS admits in its Response that Counts IV, V, and VI are each governed by a two-year statute of limitations. ECF No. 27 n.1. However, TRS insists that these claims are not time-barred because the wrongful conduct alleged in each count is "on-going." Id. at 4. In support, TRS claims that "[c]ourts have consistently held that a statute of limitations may bar recovery of *damages*

outside a limitations period, but it does not bar the claim itself or any relief for acts within the limitations period." Id. at 4–6 (citing, e.g., E.W., LLC v. Rahman, 896 F. Supp. 2d 488, 505 (E.D. Va. 2012) (emphasis added); Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC, 241 F. Supp. 3d 708, 722 (E.D. Va. 2017); Teaching Co. P'ship v. Unapix Entm't, Inc., 87 F. Supp. 2d 567, 586 (E.D. Va. 2000)). Indeed, this Court has held that

> the statute of limitations does not necessarily act as a bar to the entirety of the infringing acts about which Plaintiff complains. When a defendant commits multiple wrongful acts, a separate statute of limitations attaches to each wrongful act. Consequently, acts of infringement alleged to have been committed by the Defendant that fall within the limitations period are still actionable for damages.

Rahman, 896 F. Supp. 2d at 505 (internal citations omitted).

When applying such rule to the instant case, TRS's complaint alleges several discrete wrongful acts that occurred within the required two-year period, that is, on or after December 12, 2016. For example, the complaint contains the following allegations:

- "In spite of Williams' pledge [on or after September 20, 2016] to stop marketing the IV Mounted Barriers, Williams and Burlington used TRS's Trade Secrets and continued to market and sell the infringing product *for at least two more years*, as evidenced by no change in Burlington's website offerings for the IV Mounted Barrier and multiple subsequent sales of the IV Mounted Barriers to actual and potential customers of TRS." Compl. ¶ 49 (emphasis added); see id. ¶ 48.

- TRS discovered through emails *beginning March 27, 2017*, that "Burlington had shipped three of its infringing IV Mounted Barriers to TRS's customer McLaren Bay Region Hospital." Id. ¶ 49 (emphasis added).

- "[Burlington's] infringing images were still being published on Burlington's website as recently as *August 21, 2018*." Id. ¶ 100 (emphasis added); see id. ¶ 61.

- "Burlington and/or Phillips *continue* to infringe TRS's copyright by advertising and selling or otherwise exploiting their IV Mounted Barriers using unauthorized derivative photographs on their websites, third party websites, and in their brochures and marketing materials." Id. ¶ 103 (emphasis added).

- "Beginning in 2015, *and continuously since that time*, Defendants have been publishing, selling, and otherwise marketing their IV Mounted Barriers, including removing or obliterating TRS's trademark from TRS's copyrighted photographs to create Defendants' derivative marketing materials, and using inferior, look-alike connection assemblies to convince the consuming public that Defendants' goods are genuine TRS products or that Defendants' goods are endorsed by TRS or to compete unfairly for customers." Id. ¶ 116 (emphasis added).

- "After Burlington was engaged by TRS, . . . the Defendants sold and *continue to sell* their [confusingly similar] IV Mounted Barriers in competition with TRS['s] [Rad-Guard™ Radiation Shield]." Id. ¶ 128 (emphasis added).

- "Defendants *advertise* through trade channels that are substantially similar, if not identical, to those used by TRS . . ." Id. ¶ 129 (emphasis added).

- Defendants *are intentionally misrepresenting* the source of their goods and services, and/or misrepresenting that the Defendants and/or their goods and services are sponsored by, or affiliated, connected, or associated with TRS . . ." Id. ¶ 132 (emphasis added).

- "Defendants *have used and are using an infringing product*, the IV Mounted Barrier, that is confusingly similar to the Rad-Guard™ Radiation Barrier," id. ¶ 138 (emphasis added), which "Defendants *advertise* through trade channels that are substantially similar, if not identical, to those used by TRS for its Rad-Guard™ Radiation Shield and other products . . ." id. ¶ 139 (emphasis added).

In light of these allegations, the Court finds that TRS's unfair competition claims in Counts IV, V, and VI are not time-barred because they allege ongoing wrongful acts, some of which allegedly occurred within the two-year period before the complaint was filed. Accordingly, Defendants' motion to dismiss Counts IV, V, and VI on this ground is denied.

## VI. MOTION TO DISMISS COUNTS IV–XIII FOR FAILURE TO STATE A CLAIM

In the remaining part of Defendants' Motion to Dismiss, they argue that Counts IV–XIII should be dismissed for failure to state a claim. The Court will address each of these claims in turn below.

## A. COUNT IV – UNFAIR COMPETITION UNDER THE FEDERAL LANHAM ACT

Count IV alleges that Defendants willfully engaged in unfair competition, false advertising, and false designation of origin, in violation of the Lanham Act, 15 U.S.C. § 1125(a). Section 43(a) of the Lanham Act creates civil liability for any person who:

> in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a). Therefore, to succeed on these claims, TRS must show that Defendants (1) used a designation, (2) in interstate commerce, (3) in connection with goods, (4) which designation is likely to cause confusion, mistake, or deception as to (5) the origin, sponsorship, or approval of Defendants' goods, and (6) TRS has been, or is likely to be, damaged by these acts.

Defendants argue that Count IV fails to state a plausible claim for relief because the facts alleged in support of Count IV are contradicted by other allegations in complaint. Specifically, Defendants argue that the allegation in paragraph 116 that Defendants used "inferior, look-alike connection assemblies to convince the consuming public that Defendants' goods are genuine TRS products or that Defendants' goods are endorsed by TRS or to compete unfairly for customers" is contradicted by paragraphs 61 and 62, which allege that Defendants marked their allegedly infringing products with their *own* trade dress. ECF No. 20 at 10. Defendants therefore conclude that, while the complaint may state a claim for copyright and patent infringement, it does "not plausibly support a claim for unfair competition based on false designation or origin or false advertising." Id.

This claim is without merit. As TRS rightly points out, Rule 8 of Federal Rules of Civil Procedure expressly allows plaintiffs to plead multiple claims either in a single count or in separate ones and may plead such statements in the alternative. Fed. R. Civ. P. 8(d)(2). Furthermore, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Id. Therefore, TRS is permitted to allege that Defendants' doctoring of TRS-copyrighted photos is both copyright infringement and a Lanham Act violation for unfair competition, passing off, and false advertising, so long as it asserts sufficient facts in support of each claim. ECF No. 27 at 25.

Defendants further argue that, at the very least, Count IV should be dismissed as to Defendants Williams and Fox Three because neither "advertised or sold the products" at issue and therefore cannot be liable under Section 43 of the Lanham Act. Id. In support, Defendants argue that Fox Three is an investment company, not a medical equipment distributor, and is therefore not involved in the sale or advertising of any products whatsoever. Defendant Williams further argues that he is not liable for the alleged tortious actions of Burlington because the complaint does not support piercing the corporate veil. Both of these arguments are unavailing.

Paragraph 25 of the complaint alleges that "Burlington, *at the direction of Fox Three and Williams*, . . . make[s], sell[s], or offer[s] to sell radiation shields that are covered by [the '346 Patent]." Compl. ¶ 25 (emphasis added). The complaint also alleges that "Fox Three and Williams formed Burlington in part to manufacture, market, and sell competing products to compete with TRS." Id. ¶ 43. Therefore, Defendants' claim that Fox Three had nothing to do with the sale of the infringing products at issue contradicts the well-pleaded allegations of the complaint, which is improper on a Rule 12(b)(6) motion to dismiss. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 449 (4th Cir. 2011). Furthermore, the complaint's allegations are sufficient to state a claim against Williams because they indicate that he personally engaged in or

authorized the alleged tortious conduct by Burlington.  See discussion supra Part IV.  For these

reasons, Defendants' Motion to Dismiss Count IV for failure to state a claim is denied.

### B.    COUNT V – COMMON LAW UNFAIR COMPETITION AND VCPA CLAIM

Count V claims that Defendants engaged in unfair competition in violation of Virginia

common law and the Virginia Consumer Protection Act, Va. Code § 59.1-200(A).  These are two

separate and distinct claims.  They are discussed in turn below.

### 1.    Applicable Law

The Virginia Consumer Protection Act ("VCPA") prohibits several enumerated

"fraudulent acts or practices committed by a supplier in connection with a consumer transaction."

Va. Code Ann. § 59.1-200(A).  The Virginia General Assembly intended that the VCPA "be

applied as remedial legislation to promote fair and ethical standards of dealings between suppliers

and the consuming public." Va. Code § 59.1–197.  Therefore, only consumer transactions qualify

for coverage under the VCPA.[2]  Baker v. Elam, 883 F. Supp. 2d 576, 578 (E.D. Va. 2012) (holding

that transactions between two dog breeders were merchant-to-merchant transactions and thus were

not within the scope of the VCPA).

---

[2] Va. Code § 59.1–198 defines a "consumer transaction" as:

(1) The advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes;

(2) Transactions involving the advertisement, offer or sale to an individual of a business opportunity that requires both his expenditure of money or property and his personal services on a continuing basis and in which he has not been previously engaged;

(3) Transactions involving the advertisement, offer or sale to an individual of goods or services relating to the individual's finding or obtaining employment;

(4) A layaway agreement, whereby part or all of the price of goods is payable in one or more payments subsequent to the making of the layaway agreement and the supplier retains possession of the goods and bears the risk of their loss or damage until the goods are paid in full according to the layaway agreement; and

(5) Transactions involving the advertisement, sale, lease, or license, or the offering for sale, lease or license, of goods or services to a church or other religious body.

Count V also asserts common law unfair competition. Virginia law recognizes "only a very limited cause of action for unfair competition." See Benj. T. Crump Co. v. J. L. Lindsay, 130 Va. 144 (1921). Importantly, it does not recognize false advertising as a form of common law unfair competition. Id. at 165. Rather, it recognizes a narrow category of deception by which "goods of one dealer are palmed off as those of another." Monoflo Int'l, Inc. v. Sahm, 726 F. Supp. 121, 127 (E.D. Va. 1989) (citation omitted); see also Unlimited Screw Products, Inc. v. Malm, 781 F. Supp. 1121, 1125–26 (E.D. Va. 1991) (explaining that the Lanham Act's prohibition against deceptive advertising practices is more analogous to Virginia law of fraud than Virginia law on unfair competition).

## 2. Discussion

With respect to the VCPA claim, Defendants argue that Count V fails to state a claim for a violation of the VCPA because the only relevant transactions alleged in the complaint are between merchants and therefore are not "consumer transactions" as defined in the statute. The Court agrees. When reviewing the complaint, every relevant transaction alleged is one between companies, not individual consumers. See, e.g., Compl. ¶ 17 (alleging that "dozens of hospitals, doctors and healthcare providers" have purchased and used TRS's products "to decrease radiation exposure . . . in healthcare operations"); id. ¶ 49 (alleging that one of the infringing transactions was between Burlington and TRS customer, McLaren Bay Region Hospital). Because the transactions at issue do not involve "goods or services to be used primarily for personal, family or household purposes," they do not qualify as a consumer transaction under the VCAP. See supra n.5. For this reason, Count V must be dismissed insofar as it alleges a violation of VCAP.

With respect to the remaining common law claim of unfair competition, Virginia unfair competition is narrowly limited to deceptive "palming off" of the goods of one dealer as those of another. Therefore, the Court agrees with Defendants that this claim "overlaps entirely" with the

16

common law claim of passing off that is asserted in Count VI. ECF No. 20 at 11 n.6. Therefore, the remaining unfair competition claim in Count V must be stricken as redundant, see Fed. R. Civ. P. 12(f), and the Court need only address the sufficiency of the unfair competition/passing off claim in Count VI.

In summary, Defendants' Motion to Dismiss Count V is granted, in part, only with respect to the VCPA claim alleged therein. However, the remainder of the count is stricken on the Court's own motion pursuant to Rule 12(f).

## C. COUNT VI – COMMON LAW UNFAIR COMPETITION/PASSING OFF

Count VI alleges that Defendants engaged in unfair competition by engaging in "passing off" in violation of Virginia common law. As explained above, "[t]he essential element of unfair trading is deception, by means of which goods of one dealer are palmed off as those of another, whereby the buyer is being deceived." Rosso & Mastracco, Inc. v. Giant Food Shopping Ctr. of Va., Inc., 200 Va. 159, 166 (Va. 1958) (internal quotations omitted). Defendants argue that Count VI fails to "plausibly allege passing off" that is distinct from TRS's infringement claims because, according to the complaint, the Defendants sold their *own* product (the IV Mounted Barrier) and advertised it using their *own* logos, which cannot plausibly cause confusion as to source or affiliation. ECF No. 20 at 12.

But Defendants' characterization of Count IV is inaccurate. Count IV alleges that the "Defendant have used and are using an infringing product, the IV Mounted Barrier, that is confusingly similar to the Rad-Guard™ Radiation Barrier," Compl. ¶ 138; that Defendants advertise such product "through trade channels that are substantially similar" to those used by TRS, id. ¶ 139; that "Defendants offer their IV Mounted Barriers to the same consumers and/or class of consumers as TRS," id. ¶ 140; that "Defendants are intentionally misrepresenting the source of their goods and services" and/or misrepresenting that such goods are affiliated with TRS,

17

id. ¶ 142; and that "Defendants' marketing and sales of their IV Mounted Barrier have caused actual confusion" about the "source, sponsorship, or affiliation of goods offered by Defendants," id. ¶ 141.

Based on these allegations, the Court finds that the Count VI sufficiently alleges that Defendants engaged in consumer deception and confusion through their production, sale and advertising of the IV Mounted Barrier to survive a motion to dismiss. Although the Court acknowledges that federal preemption issues may arise with respect to this claim, such a determination cannot be made at this early stage of the litigation, as critical facts have not yet been proven. Until such time, TRS is permitted to pursue alternative and even conflicting theories of relief. See Fed. R. Civ. P. 8. Therefore, dismissal of Count VI is inappropriate at this stage, and Defendants' Motion to Dismiss as to Count VI is accordingly denied at this time.

### D. COUNT VII – TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS

Count VII alleges that all Defendants are liable for damages for tortious interference with prospective contractual relations. In their motion, Defendants argue that Count VII fails to state a claim because it does not allege a valid contractual relationship or business expectancy, which is a necessary element of this tort under Virginia law. ECF No. 20 at 13; see Supinger v. Virginia, 167 F. Supp. 3d 795, 821 (W.D. Va. 2016) (setting forth the elements of tortious interference with contract expectancy in Virginia) (citing Lewis–Gale Med. Ctr., LLC v. Alldredge, 282 Va. 141 (2011)). In support, Defendants argue that the complaint only contains conclusory allegations about losing "customers" and its expectancy with "new customers," which lack the requisite specificity to raise a right to relief above a speculative level. Id. (citing Compl. ¶ 148).

It is true that courts routinely dismiss tortious interference claims where the plaintiff fails to identify a specific customer or specific business expectancy. See E. W., LLC v. Rahman, 873

18

F. Supp. 2d 721, 735 (E.D. Va. 2012) (dismissing claim where plaintiff failed to plead "facts establishing which customer relationships defendants allegedly interfered with or how defendants engaged in intentional misconduct or employed improper methods to interfere with those relationships" (collecting cases)). Here, however, paragraph 49 of the complaint refers to at least one specific TRS customer that was poached or "interfered with": McLaren Bay Region Hospital. Compl. ¶ 49. Therefore, Defendants' Motion to Dismiss Count VII on this ground is denied.

### E.    COUNT VIII – CONVERSION

Count VIII claims that Defendants Williams and Burlington are allegedly liable for conversion because they wrongfully exercised dominion over TRS's personal property, namely, 24 miniature Cardio-TRAP system valued at $6,000 and 4 Rad-Guard Shields valued at $4,000, after TRS provided them to be used in Burlington's sales demonstrations. Compl. ¶¶ 153, 30, 31. TRS alleges that it has requested return of these items, but "Burlington continues to unlawfully possess them." Id. ¶¶ 30, 31. Count VIII also alleges that Defendants Williams and Burlington have converted other property of TRS, "including TRS's confidential information and proprietary material." Id. ¶ 154.

Defendants argue that Count VIII should be dismissed to the extent it alleges conversion of unspecified property under the umbrella of "confidential material and proprietary material." ECF No. 20 at 14. Defendants further suggest that, to the extent such property overlaps with the trade secrets alleged in Count XII, any conversion claim is preempted by the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. Id. However, as explained above, federal preemption issues cannot be determined at this early stage of the litigation given that TRS has not yet prevailed on any DTSA claim. Furthermore, after reviewing the complaint's allegations in a light most favorable to TRS, the Court finds TRS has alleged sufficient facts to state a claim, plausible on its face, that Burlington and/or Williams have converted demonstration units and confidential and

19

proprietary information related to the design and/or construction and/or marketing of TRS's Rad-Guard™ radiation shields. Therefore, dismissal of Count VIII is inappropriate at this stage.

### F.   COUNT IX – BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY

Count IX asserts a breach of fiduciary duty and duty of loyalty claim against Defendant Williams. The complaint alleges that Williams had a fiduciary duty and duty of loyalty to TRS and that Williams breached those duties by (1) taking and using, (2) siphoning away, and (3) misusing TRS's trade secrets and proprietary business information in order to "give himself and Burlington an unlawful competitive advantage in the market." Id. ¶ 159.

"The elements of a claim for breach of fiduciary duty are (1) a fiduciary duty, (2) breach, and (3) damages resulting from the breach." Informatics Applications Grp., Inc. v. Shkolnikov, 836 F. Supp. 2d 400, 424 (E.D. Va. 2011) (citing Carstensen v. Chrisland Corp., 247 Va. 433, 444, 442 S.E.2d 660 (Va. 1994)). Williams argues that Count IX fails to state a claim because it fails to establish the first element – that Williams owed a fiduciary duty to TRS. In support, Defendant argues that a fiduciary duty only arises out of an agency agreement between an agent and a principal or out of an employer-employee relationship, neither of which are alleged here.

In response, TRS argues that the complaint's factual allegations support the existence of a "separate agency agreement" between Williams and TRS that arose during the 2015 meeting between Williams and TRS's CFO, Robert Shealy. ECF No. 27 at 11 (citing Compl. ¶ 39). By this agreement, TRS argues that Williams agreed to perform independent duties as TRS's agent. TRS only points to one paragraph in the complaint – paragraph 39 – as the source of these alleged "independent duties":

> . . . while employed by Fox Three at Burlington, *Williams worked with TRS and its employees to sell TRS products to customers*; by virtue of his position and his interaction with TRS and its customers, Williams had access to TRS customer contacts, testing results, and technical information relating to the TRS products with

the express understanding that all such information belonged to TRS, that Burlington, Fox Three, and Williams were granted access to such information so that Burlington, Fox Three, and *Williams in particular, could perform their duties as the TRS sales representatives*, and that TRS's information was confidential and proprietary.

Compl. ¶ 39 (emphasis added). TRS argues that these facts support the existence of a special agent-principal relationship between Williams and TRS, and that the question of whether such relationship actually existed should be left to the fact-finder.

### 1. Applicable Law

"Agents are fiduciaries and owe their principals a strict duty of loyalty." Bocek v. JGA Assocs., LLC, 537 F. App'x 169, 176 (4th Cir. 2013) (citing Restatement (Third) of Agency § 8.01 ("An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship.")). Therefore, "[a]n agent . . . breaches his fiduciary duty by using confidential information belonging to the principal for the agent's own benefit." Id. (citing Restatement (Third) of Agency § 8.05(2) ("An agent has a duty . . . not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party.").

However, "Virginia courts vigilantly police the border between tort and contract law so as '[t]o avoid turning every breach of contract into a tort.'" Bocek, 537 F. App'x at 177 (quoting Augusta Mutual, 645 S.E.2d at 293 ("[I]n order to recover in tort, the duty . . . breached must be a common law duty, not one existing between the parties solely by virtue of the contract.")). Therefore, the fiduciary duties inherent in every agency relationship are deemed to arise in *contract* if such agency relationship is formed by contract. Id. "Nonetheless, recovery in tort is permitted in cases where the tort was committed *after* the termination of the parties' contract." Bocek, 537 F. App'x at 177.

### 2. Discussion

21

Applying these principals to the instant case, for TRS to state a claim for breach of fiduciary duty against Williams, the complaint must state facts sufficient to show: (1) that an agency relationship was formed between Williams and TRS; (2) that Williams breached his fiduciary duties to TRS; and (3) if Williams' agency relationship was formed by contract, that the alleged breach of duty happened *after* the expiration or termination of such contract. When reviewing the complaint in light most favorable to TRS, the Court finds that TRS does not allege sufficient facts to establish that Williams owed any fiduciary duties to TRS.

Paragraph 29 of the complaint alleges that TRS entered into a Distribution Agreement with Burlington *and Williams* on October 15, 2014. Compl. ¶ 29. However, the Distribution Agreement itself, which Defendants attach to their Motion to Dismiss, clearly shows that the agreement was only entered between TRS (the "manufacturer") and Burlington Medical Supplies Inc. (the "distributor"). ECF No. 20-1 § 1. Williams was not a party to the agreement. Id. Such agreement provides that Burlington has the "non-exclusive right . . . to purchase, inventory, promote, and resell 'Manufacturer's Products'" as defined therein, including the Rad-Guard shields and the Cardio-TRAP systems. Id. §§ 1–2. Furthermore, by such agreement, Burlington agreed to pay for the products at the prices set by TRS with 60 days' notice and agreed to be invoiced for such payment. Id. §§ 3–4. Section 13, which speaks to the "Relationship of the Parties," states as follows: "The relationship between Manufacturer and Distributor is that of vendor and vendee. *Distributor, its agents and employees shall, under no circumstances, be deemed employees, agents or representatives of Manufacturer*." Id. ¶ 13 (emphasis added). Finally, the term of the contract is one year, but shall "automatically continue unless terminated by either party with at least 30 Days prior written notice." Id. ¶ 14.

In May 2015, before the expiration of the Distribution Agreement's one-year term, Fox Three acquired Burlington and changed its name to Burlington Medical, LLC and announced that Williams would continue as CEO. Compl. ¶ 38. The complaint alleges that, after this acquisition and name change, "Burlington was still serving as a sales representative and distributor for TRS's products" and "Williams worked with TRS and its employees to sell TRS products to customers." Compl. ¶ 39. "Shortly after," Williams and the CEO of TRS allegedly met "to confirm that the business relationship between TRS and Burlington would continue." Id. ¶ 41. Williams allegedly agreed. Therefore, TRS alleges that the Distribution Agreement was adopted and ratified by the newly-named Burlington company during this 2015 meeting, or in the alternative, "a new contract was formed between Burlington/Fox Three and TRS as a result of Burlington's continued distribution of TRS products following [the] acquisition." Id.

Based on these allegations, TRS's characterization of the complaint as establishing a "separate agency relationship" between Williams and TRS is without merit. He, as an agent/CEO of Burlington, acted as a distributor of TRS's products pursuant to the Distribution Agreement and/or pursuant to a new 2015 agreement between TRS and Burlington post-acquisition by Fox Three. Nothing in the complaint alleges that Williams entered into his own individual distribution agreement with TRS. And even if he had, the agreement would have created a vendor-vendee relationship with TRS, not an agent-principal relationship. For these reasons, the complaint simply does not allege facts to show that Williams owed any fiduciary duties to TRS as its agent. Although Williams may have breached other duties and laws with respect to TRS, the complaint does not sufficiently allege that he breached a fiduciary duty. Accordingly, Defendants' Motion to Dismiss Count IX is granted, and such count is dismissed for failure to state a claim.[3]

---

[3] Defendants also argue that Count IX should be dismissed as barred by the applicable statute of limitations. ECF No. 20 at 8 (citing Va. Code. Ann. § 8.01-248). The Court declines to reach this issue.

## G.    COUNT X – BREACH OF CONTRACT

Count X alleges breach of contract against Defendants Williams and Burlington.  It alleges that "on or about October 15, 2014, TRS and Williams and his alter ego Burlington executed a written contract, the Distribution Agreement," which TRS allegedly terminated on April 13, 2017.  Compl. ¶¶ 164, 166; see 2017 Termination Letter, attached as Exhibit 2 to Def. Mem, ECF No. 20-2.  Count X further alleges that Williams and Burlington breached the Distribution Agreement by engaging in the distribution, marketing and sale of products that directly compete with TRS's products.  Id. ¶ 165.  In the alternative, Count X alleges that, by the same conduct, Williams and Burlington breached a "contract implied in fact" arising from the verbal agreement formed with TRS in or about May 2015.  Id. ¶¶ 168–69.

### 1.    Breach of the Distribution Agreement

To the extent Count X alleges breach of the Distribution Agreement, Defendants argue that it fails to state a claim for three reasons: (1) neither Williams nor Burlington are parties to the agreement; (2) TRS's April 2017 termination letter with respect to the Distribution Agreement did not mention any breach of such agreement as the cause of termination; and (3) TRS's past business conduct with Burlington "weakens any plausible inference that Defendants breached the Distribution Agreement."  ECF No. 20 at 15–16.

As a threshold matter, the last two of these arguments attempt to challenge the veracity of TRS's claims of breach and/or assert fact-based affirmative defenses, which is improper on a Rule 12(b)(6) motion and shall not be considered here.  As for the first argument, the Court agrees that Williams is not a party to the Distribution Agreement and thus cannot be liable for breach of such agreement.  However, the complaint alleges facts creating a plausible inference that Defendant Burlington assumed and/or ratified the Distribution Agreement of its precursor entity, Burlington Medical Supplies Inc., after the 2015 Fox-Three acquisition.  Compl. ¶¶ 38, 41.  Furthermore, the

complaint alleges that Burlington "enag[ed] in the distribution, promotion, marketing or sale of any good or products that compete or conflict with [TRS's] Products," which would violate Section 6(c) of the Distribution Agreement. ECF No. 20-1 § 6. Therefore, the Court finds that Count X states a claim for breach of the Distribution Agreement as to Defendant Burlington but not as to Defendant Williams.

### 2. Breach of Implied Contract

To the extent Count X alleges breach of a contract implied in fact, Defendants argue that it fails to state a plausible claim of relief because the alleged course of conduct between TRS and Burlington and Williams does not evidence a binding obligation between such parties that Burlington or Williams allegedly breached. ECF No. 20 at 17. The Court agrees.

Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Squire v. Virginia Hous. Dev. Auth., 287 Va. 507, 517 (2014) (internal citation omitted). In the absence of an express contract, one of two kinds of implied contracts may exist: a contract implied-in-fact or a contract implied-in-law. City of Norfolk v. Norfolk Cnty., 120 Va. 356, 363 (1917). Relevant here, implied-in-fact contracts are just like express contracts except that, rather than having "all of the terms and conditions expressed between the parties, . . . some of the terms and conditions are implied in law from the conduct of the parties." Hendrickson v. Meredith, 161 Va. 193, 200, 170 S.E. 602, 605 (1933). However, "[t]he fiction of an [implied-in-law contract] will not be indulged in every case, but only where, in equity and good conscience, the duty to make such a promise exists." City of Norfolk, 120 Va. at 374.

Here, based on the facts alleged in the complaint, it is possible that TRS and Burlington alternatively entered into an implied contract after the 2015 Fox-Three acquisition. However, the

25

scope of such implied contract would be limited to the alleged conduct of the parties – namely – the marketing and sale of TRS products and payment for same. See Hendrickson, 162 Va. at 200 ("The promise is implied from the consideration received, [and] the legal duty imposed upon the defendant defines the contract."). Therefore, any such implied contract would not subsume specific terms from the 2014 Distribution Agreement, including the non-compete clause contained in Section 6. Yet, Count X is based entirely on violations of this section and Defendants' alleged misuse of TRS's products. Count X does not allege a cognizable breach of the implied contract (i.e., non-payment or non-performance) that is evidenced by the parties' course of conduct. Therefore, the Court finds that Count X fails to state a viable, alternative claim for breach of implied contract under Virginia law.

## H.    COUNT XI – CIVIL CONSPIRACY

Count XI claims that the Defendants are liable to TRS under Virginia's civil conspiracy statute, Va. Ann. Code § 18.2-499–500, as well as for common law conspiracy. Compl. ¶ 172. In support, the complaint alleges that "Defendants engaged in a concerted action with the intent to accomplish the unlawful acts of infringing, misappropriating, retaining, and/or reproducing TRS's confidential information, trade secrets, and/or other proprietary material despite knowledge of Williams' and Burlington's obligations to TRS." Id. ¶ 173. The complaint further alleges that Defendants "engaged in an agreement and in concerted action" to accomplish the goals of the conspiracy, and that TRS was harmed by such conspiracy. Id. ¶¶ 174–75.

Defendants argue that Count XI should be dismissed because it fails to show the existence of an underlying tortious violation as the purported goal of the conspiracy. ECF No. 20 at 17. It is true that, in Virginia, both statutory and common law civil conspiracy requires proof that a "plaintiff sustains damages as a result of an act that is itself wrongful or tortious." Dunlap v. Cottman Transmission Sys., LLC, 287 Va. 207, 215 (2014). Therefore, a claim for civil conspiracy

26

"must at least allege an unlawful act or an unlawful purpose" to survive a motion to dismiss. Id. at 216 (internal quotation omitted).

Here, the complaint alleges at least four "unlawful acts" as the object of the conspiracy: "[1] infringing, [2] misappropriating, [3][4] retaining, and/or reproducing TRS's confidential information, trade secrets, and/or other proprietary material despite knowledge of Williams' and Burlington's obligations to TRS." Compl. ¶ 173. Notably, in their Motion, Defendants do not challenge the sufficiency of TRS's infringement claims in Counts I–III of the complaint. Therefore, Defendants' claim the TRS's civil conspiracy claim fails to allege the occurrence of at least one unlawful act as the object of the conspiracy is plainly without merit.

Defendants next argue that Count XI is barred by the doctrine of intracorporate immunity. ECF No. 20 at 17. Such doctrine provides that a single entity, like a corporation, cannot conspire with itself because a conspiracy requires the agreement of two or more distinct persons. See Fox v. Deese, 234 Va. 412, 428 (1987). Although Williams, as the alleged CEO of Burlington, cannot conspire with Burlington, he can conspire with the other corporate defendants, including Fox Three and Phillips. Indeed, the complaint alleges that Williams and Fox Three conspired to form Burlington. Compl. ¶ 43. The complaint also alleges that all of the Defendants conspired to have Phillips build Burlington's allegedly infringing IV Mounted Barriers. Id. ¶ 59. Therefore, Defendants' Motion to Dismiss Count XI on the ground that it is barred by the intracorporate immunity doctrine is also denied.

## I.     COUNT XII – MISAPPROPRIATION OF TRADE SECRETS (18 U.S.C. § 1836)

Count XII alleges that Defendants Williams, Burlington, and Fox Three misappropriated TRS's trade secrets in violation of the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. To state a claim under DTSA, a plaintiff must allege (1) the existence of a trade secret as defined in the statute; (2) a nexus between the secret and interstate or foreign commerce; and (3)

misappropriation of such trade secret. Space Sys./Loral, LLC v. Orbital ATK, Inc., 306 F. Supp. 3d 845, 853 (E.D. Va. 2018). Furthermore, because DTSA became effective on May 11, 2016, "a plaintiff states a plausible claim for relief only if it 'sufficiently alleges a prohibited act occurring after [that date].'" Hydrogen Master Rights, Ltd. v. –92., No. CV 16-474, 2017 WL 78582, at *10 (D. Del. Jan. 9, 2017).

In its complaint, TRS alleges that, from 2014 to 2017, it shared its "Trade Secrets," namely, "confidential information regarding potential or actual TRS customers, including ship-to and bill-to addresses, order history, contact names, and telephone numbers, and confidential deal terms," with Williams, Burlington, and Fox Three "based on mutual trust" after entering into the Distribution Agreement with Burlington. Compl. ¶¶ 179, 184. TRS further alleges that Williams, Burlington and Fox Three then "used TRS's products in combination with TRS's Trade Secrets, namely, confidential TRS customer lists, to develop, manufacture, market, promote, offer for sale, and sell the infringing IV Mounted Barrier . . ." Id. ¶ 187.

In their Motion to Dismiss, Defendants argue that Count XII fails to state a claim under DTSA for two key reasons. First, Defendants argue that the complaint fails to allege the existence of a trade secret as defined in the DTSA because (i) TRS does not allege any reasonable measures taken to protect the alleged secrets and (ii) TRS cannot show that the alleged secrets have any independent economic value. ECF No. 20 at 18–20. Second, Defendants argue that the complaint fails to allege the element of misappropriation. Id. at 21. In addition, Defendants argue that, at the very least, Count XII should be dismissed as to Defendant Fox Three because the complaint fails to identify a single transaction or communication between Fox Three and TRS. Id. at 22. For the reasons below, the Court finds that TRS has stated a plausible claim for relief under DTSA against Defendants Williams, Burlington and Fox Three.

## 1.    TRS Has Sufficiently Pled the Existence of a Trade Secret.

The DTSA defines the term "trade secret" as:

> . . . all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
>
> > **(A)** the owner thereof has taken reasonable measures to keep such information secret; and
> >
> > **(B)** the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C.A. § 1839(3). The first issue is whether TRS has pled the existence of any trade secrets that fall under this umbrella of eligible information. TRS clearly has. Paragraph 179 of the complaint defines TRS's trade secrets as including confidential lists of potential and actual TRS customers. This Court has held that customer lists qualify as trade secrets because they are "considered confidential"; they are "not the sort of thing that properly would be in the possession of a competitor"; and they "would be of value to a competitor that could determine where to apply its resources and who [sic] to target." MicroStrategy Inc. v. Bus. Objects, S.A., 331 F. Supp. 2d 396, 424–25 (E.D. Va. 2004).

The second issue is whether TRS has pled reasonable measures to keep its trade secrets confidential. As this Court explained in MicroStrategy:

> Simply because information is disclosed outside of a company does not result in the loss of trade secret status. "The secrecy need not be absolute; the owner of a trade secret may, without losing protection, disclose it to a licensee, an employee, or a stranger, if the disclosure is made in confidence, express or implied." Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 299 F. Supp. 2d 565, 574 (E.D. Va. 2004) . . . Furthermore, the requirement that the information not be generally known refers to the knowledge of other members of the relevant

industry—the persons who can gain economic benefit from the secret. See Uniform
Trade Secrets Act, § 1, comment. Finally, only reasonable efforts must be taken to
maintain secrecy. Restricting access to information, implementing confidentiality
agreements, and providing physical barriers to access are all reasonable efforts.

331 F. Supp. 2d at 416. In the complaint, TRS alleges that it has restricted access to its alleged

trade secrets and that it only disclosed such secrets to Defendants on a need-to-know basis. Compl.

¶ 182. This is sufficient to the state the existence of a trade secret at the pleading stage. The fact

that the Distribution Agreement did not contain a confidentiality clause is not automatically

disqualifying. Rather this is "fact intensive question" to be decided later in the litigation. Young

Design, Inc. v. Teletronics Int'l, Inc., No. Civ. A. 00-970-A, 2001 WL 35804500, at *6 (E.D. Va.

July 31, 2001) (citation omitted).

The third issue is whether TRS has pled that its alleged trade secrets have economic value.

The most important factor tending to show that a secret has economic value is that it is "not readily

ascertainable through legitimate means." MicroStrategy, 331 F. Supp. 2d at 416. TRS has

sufficiently alleged this in paragraph 181 by describing how Defendants allegedly used its

customer list to poach a TRS customer, McLaren Bay Region Hospital, to which Burlington

allegedly sold an IV Mounted Barrier for $3000. Compl. ¶ 181. Therefore, Defendants' motion

to dismiss Count XII on the ground that it fails to allege the existence of a trade secret is denied.

### 2.    TRS Has Sufficiently Pled Misappropriation.

The DTSA defines "misappropriation" as:

(A) acquisition of a trade secret of another by a person who knows or has reason
to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied
consent by a person who--

    (i) used improper means to acquire knowledge of the trade secret;

    (ii) at the time of disclosure or use, knew or had reason to know that the
    knowledge of the trade secret was--

> **(I)** derived from or through a person who had used improper means to acquire the trade secret;
>
> **(II)** acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
> **(III)** derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
> **(iii)** before a material change of the position of the person, knew or had reason to know that--
>
> > **(I)** the trade secret was a trade secret; and
> >
> > **(II)** knowledge of the trade secret had been acquired by accident or mistake.

18 U.S.C. § 1839(5). TRS has pled misappropriation as described in subsection (B)(ii)(II) above because it alleges that Defendants (i) used TRS's trade secret (ii) without express of implied consent of TRS (iii) knowing that Defendants acquired this information only by virtue of its alleged contractual relationship with TRS, which gave rise to a duty to maintain the secrecy of such trade secrets and to only use such secrets for the limited purpose of fulfilling its duties as the distributor of TRS's products. See Compl. ¶¶ 181–91. Therefore, Defendants' motion to dismiss Count XII on the ground that it fails to allege the misappropriation under the DTSA is denied.

### 3. The Complaint Alleges a DTSA Claim as to Fox Three.

Lastly, the Court finds sufficient factual allegations in the complaint to support TRS's DTSA claim against Defendant Fox Three at this early stage of the litigation. For example, the complaint alleges that "Williams, Burlington, and *Fox Three* used TRS's products in combination with TRS's Trade Secrets, namely, confidential TRS customer lists, to develop, manufacture, market, promote, offer for sale, and sell the infringing IV Mounted Barrier to customers and distributors of TRS on terms favorable to Williams, Burlington, and Fox. Three." Compl. ¶ 187 (emphasis added). Therefore, Defendants' Motion to Dismiss Count XII as to Defendant Fox Three is denied at this time.

**J.    COUNT XIII - NEGLIGENCE**

The last count of TRS's complaint, Count XIII, asserts a common law negligence claim against Defendants Williams and Burlington. In paragraph 196 of the complaint, TRS alleges three "duties" to TRS that these two Defendants have allegedly breached: (1) a duty of "care and loyalty to employ Burlington sales staff to market and sell TRS products"; (2) a duty to "not misappropriate and misuse TRS's confidential customer lists"; and (3) a duty to "not market and sell a competing infringing IV Mounted Barrier." Compl. ¶ 196. Defendants move to dismiss this count arguing that it fails to state a cognizable common law negligence claim. The Court agrees.

First, as discussed previously, Virginia courts vigilantly guard the boundary between contract and tort law. See supra at 21 (citing Bocek, 537 F. App'x at 177). The duty alleged in Count XIII to "employ Burlington sales staff to market and sell TRS products" arises directly from the alleged distribution agreement between TRS and Burlington, and therefore cannot be the basis of a tort claim for negligence.

Second, Virginia does not recognize a common law tort of misappropriation. See, e.g., Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC, 241 F. Supp. 3d 708, 725 (E.D. Va. 2017); Superformance Int'l, Inc. v. Hartford Cas. Ins. Co., 203 F. Supp. 2d 587, 589 (E.D. Va. 2002), aff'd on other grounds, 332 F.3d 215 (4th Cir. 2003). Instead, Virginia courts adhere to "a narrow, sharply defined common law definition of unfair competition, i.e. 'deception, by means of which goods of one dealer are palmed off as those of another.'" Thousand Oaks, 241 F. Supp. 3d at 25 n.26 (internal quotation omitted). Therefore, the alleged duty to "not misappropriate and misuse TRS's confidential customer lists" does not sound in a viable tort claim under Virginia law.

Third, the alleged duty to "not market or sell" competing products is also directly derived from the distribution agreement and thus does not sound in tort, as discussed above. And, to the extent TRS alleges breach of a duty not to engage in unfair competition and/or not to infringe

32

TRS's intellectual property rights, such claim is duplicative other counts in the complaint. See Counts I–III, VII. For all of these reasons, Count XIII fails to state a claim for negligence under Virginia law and must be dismissed.

## VII.    CONCLUSION

In summary, Defendants' partial Motion to Dismiss Counts IV–XIII of Plaintiff's complaint, ECF No. 19, is **GRANTED, IN PART,** and **DENIED, IN PART,** as follows:

1.      Defendants' Motion to Dismiss as to Counts IV, VI, VII, VIII, XI, and XII is **DENIED**.

2.      Defendants' Motion to Dismiss Count V for failure to state a claim is **GRANTED, IN PART,** as to Plaintiff's claim that Defendants violated the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200(A). Such claim is **DISMISSED**. Additionally, on the Court's own motion, the remainder of Count V is **STRICKEN**. Fed. R. Civ. P. 12(f).

3.      Defendant Williams' Motion to Dismiss Count IX for failure to state a claim is **GRANTED,** and such count is hereby **DISMISSED** without prejudice.

4.      Defendants' Motion to Dismiss Count X for failure to state a claim is **GRANTED, IN PART,** as to Plaintiff's claim that Defendants Burlington and/or Williams breached a contract implied-in-fact. Such claim is **DISMISSED** without prejudice. In addition, the remainder of Count X is **DISMISSED** as to Defendant Williams but remains as to Defendant Burlington.

5.      Defendants' Motion to Dismiss Count XIII for failure to state a claim is **GRANTED,** and such count is hereby **DISMISSED** without prejudice.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

Norfolk, VA
August 5, 2019

/s/
Robert G. Doumar
Senior United States District Judge